The opinion of the court was delivered by
Duncan, J.
This indictment is founded on the 23d sectionofthe act of 20th March, 1810. “It shall be the duty of the justice, on demand made either by plaintiff or defendant, to make out a copy of his proceedings at large, and deliver the said copy duly certified by him, to the party requiring the same, and if on such demand, he shall refuse so to do, it shall be a misdemeanor in office.”
The indictment contains two counts, one on the act of assembly, *375 and the other at common law. There is no other difference between these two counts, except that the second lays the refusal of the justice to deliver a copy of his proceedings, to have been done maliciously, partially and unlawfully. The second count was returned by the grand jury, ignoramus; so that the defendant did not stand charged with any malicious or partial act, but simply w-ith refusing to deliver a copy of proceedings on demand, in a certain case, between a plaintiff and defendant.
The first objection is, that this is notan indictable offence, but the ground of impeachment. The answer to this is a short one. It was made the duty of the officer to deliver a copy of his proceedings on demand by either party. It was a public duty, and the refusal a * public offence, and indictable.
The second and third objections are not supported, because the proceedings are set out with sufficient certainty. The indictment does set out a proceeding before him, a judgment in which Frederick Wible, was plaintiff, and William Webley, defendant, and a demand by Webley, the defendant, of a copy of these proceedings at large. Nothing could be fuller or more certain than this. The seventh exception is groundless. The appropriation of fines to the commonwealth for the use of the county, supposes the fine to be set, and then appropriates it to the county. The act does not prescribe any particular punishment, but leaves the offence punishable by the common law punishment for such misdemeanors.
The sixth, that there was no issue joined, has been carefully considered. In civil cases, this would be a fatal objection even after verdict. This was aeknowleded by the court in Sayer v. Poccak, Cowp. 407. Unum comma evertit totum placitum. There was a rule to show cause why the record should not be amended by adding the words “ and defendant does so likewise,” at the end of the replication, instead of, &c., and it is observable how sorely vexed Lord Mansmeld was, to find such an objection stand in the way of justice. He exclaimed, one is. ashamed and grieved, that such objections remain: they have nothing to do with the justice of the case, but only serve to entangle, without being of the least aid in preventing irregularity, and then said, without considering whether it is within the statute of Jeofails or not, it is best to amend to avoid a writ of error, and there are three grounds that satisfy me the matter in this case is amendable ; first, that it is an omission of the clerk; secondly, I will adopt the reasoning of Lord Coke, and construe, &c. to mean every necessary matter, that ought to be expressed: thirdly, by amending, the court only makes that right which the defendant himself understood to be so, by going on to trial. And I really feel adisposition in civil cases, so to consider such an omission as similiter, without resorting to the sorry aid of an, &c., and after verdict to overlook it-under the statute of jeofails, or under the statute of amendments to grant the amendment. We are coming to this: for in Hanna v. Burkholder, 7 Serg. & Rawle, *376 228, in covenant a plea of covenants performed, and issue, this word was considered a direction to the clerk, to enter it, and the omission no more than a clerical error which might be amended. In criminal cases this very amendment has been made. Harris’s case, Cro. Jac. 502, the omission of the similiter in the entry of the general issue on an indictment for nuisance brought into the King’s Bench, by certiorari, for the court said, it is but of course, and was by default of the clerk, and though it was many years before, and in the time of another clerk of assize, it was amended by the present clerk, and El Richardus Warder qui pro domino rege sequitur similiter, &e., were by order of court interlined; for it was said, that if such faults should not be amended, many of the trials on indictments and peradventure in cases of felony would be overthrown. So, in Delbridge’s Case, 2 Roll. Rep. 59, the same thing was done. In the Queen v, Tutchin, Power, J cited the case of Harris, and said the reason was, that it was looked on as a thing of course, but he could not come up to it. 2 Ld. Ray. 1068. Amendments in criminal cases may be made of such things as were amendable at the common law. Now matter of form is such matter of course as the court may supply at the common law. Baron Comyn, 1 Com. Dig. 143, cites the case in Rolls. Rep. thus — indictment for nuisance, omission of the similiter, in joining of the issue, shall be amended.
But as the entry could not be amended here, and no application ‘ is made to have the record remanded, it is not now necessary to decide on this objection, as the opinion of the court is, that the fourth exception is fatal. This is a criminal proceeding, an offence incurring the forfeiture of an office for life. An action at common law could have been maintained against the justice for refusing a copy of his proceedings: but then the demand must have been a legal one. No man could legally demand this copy without tender of the fee. The fee bill allows the justice for the copy of a judgment twenty-five cents. He hás a right to his fee instanier, before he delivers his copy. He is not responsible civililer, and that fact should be set out, until his fee is tendered. Much less ought he to be rendered a critninal, subject to forfeiture of his office. In all the cases of application for attachments for contempt against an officer for refusing to seal a writ, it has been held, that the officer could be in no contempt, unless his legal fee was tendered. Sparrow v. Cooper, 2 Wm. Bl. 1314. Here the party could be at no loss for the sum to be tendered, the law fixed that. In an action in court, the general practice has been, for the prothonotary to receive immediate payment for writs original, and subpoenas, searches, copies of papers in the cause, &c. Lyon v. M‘Manus, 4 Binn. 172. Now to bring the offender into contempt, or to subject him to an action, it would be necessary to have tendered the fees.
The view of the legislature was, that where it was the duty qf *377 the justice to make out copies on demand, and he refused, that refusal only rendered him criminal where the party put himself in a state to demand the copy by an offer of the fee. If the justice had made it out, he was not bound to deliver it. Here the gist of the crime is, refusing to deliver a copy, and it is clear he was not bound to deliver the copy before the fee paid or offered. Rendering it a misdemeanor in office, supposes some official violation of duty. It is no answer to say, all this is matter of evidence. The prosecutor must have proved it, not the defendant. It does not come by way of excuse or justification, it is the front of the offence. The defendant might not have chosen a trial by jury; he might have demurred to the indictment, and then the inquiry would be there as it is here, is there an indictable offence stated. For in all indictments it is a rule, that where the act itself is not necessarily unlawful, but becomes so by particular circumstances and relations, there all the matters must be set out in which the illegality consists. 2 Chitt. Cr. L. 227, 228. Here the illegality consisted in an unlawful refusal of the copy; but the lawful right to the copy, he could not have without tendering the justice the fee of twenty-five cents, allowed him by law, and it is for this reason the judgis reversed.
Judgment reversed,